

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
UNITED STATES OF AMERICA,

            Plaintiff,

  -against-

ALFREDO DAVIS,

           Defendant.
---------------------------------------------------------------- X

**OPINION AND ORDER
DENYING RECONSIDERATION
AND MOTION TO WITHDRAW
GUILTY PLEA**

11 Cr. 295 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Defendant Alfredo Davis pled guilty to conspiring to commit two robberies and brandishing a firearm in connection with the robberies. Soon after I allocuted him and accepted his plea, he informed his attorney that he regretted it and six months later he moved to withdraw it. I denied his motion. United States v. Davis, 906 F. Supp. 2d 305 (S.D.N.Y. 2012). Davis now moves for reconsideration based on a recent change of Supreme Court doctrine. See Alleyne v. United States, 133 S. Ct. 2151 (2013), overruling Harris v. United States, 536 U.S. 545 (2002). By this order and opinion, I deny Davis' motion for reconsideration and to withdraw his plea.

## BACKGROUND[1]

    This case involves eight gunpoint robberies of small grocery stores, known as bodegas, in the Bronx, New York, from January to March 2011. Alfredo Davis and two co-defendants, Jose Nales and Tyrone Alston, were charged with the crimes. All three have pled guilty. Nales and Alston have been sentenced.

---

[1] The background to this case is discussed in detail in the November 29, 2012 opinion denying Davis' motion to withdraw his plea. Davis, 906 F. Supp. 2d 305.

1

A federal grand jury indicted Davis, Nales, and Alston, on August 8, 2011. Davis was charged with six counts: a Hobbs Act conspiracy to commit eight robberies in violation of 18 U.S.C. § 1951; committing three of the robberies, on January 7, February 26, and March 15, 2011, in violation of 18 U.S.C. §§ 1951 and 1952; and carrying firearms in furtherance of two of the robberies, on February 26 and March 15, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i), and 922. Co-Defendant Nales was included in the conspiracy charge, the robbery charge of February 26, and the gun charge related to that robbery. Co-Defendant Alston was included in the conspiracy charge and the January 7 robbery charge.

On April 17, 2012, Nales pled guilty to the February 26, 2011 robbery. Nales was sentenced on July 27, 2012, to sixty months in custody, followed by three years of supervised release. On July 11, 2012, Alston pled guilty to resisting arrest in violation of 18 U.S.C. §111(a). Alston was sentenced on October 4, 2012 to time served (seven days), followed by twelve months supervised release.

Davis entered plea negotiations with the government. The government told Davis that should he proceed towards trial, the government would seek to supersede the indictment by alleging, under 18 U.S.C. § 924(c), that firearms were used in each of the eight robberies involved in the Hobbs Act conspiracy. Davis' attorney advised Davis that this could result in a mandatory sentence of at least 182 years. Davis and the government reached an agreement for Davis to plead guilty to a Hobbs Act robbery conspiracy involving only the robberies of February 26 and March 15, 2011, and one count of brandishing a firearm in connection with the Hobbs Act conspiracy. On these charges, Davis faced a Sentencing Guidelines range of 125 to 135 months imprisonment and a mandatory minimum sentence of seven years as a result of the

brandishing count, 18 U.S.C. § 924(c)(1)(A). See Plea Agreement, Letter from Hon. Preet Bharara, U.S. Attorney, to Jesse Siegel, Esq., attorney for Alfredo Davis (Apr. 18, 2012).

Davis scheduled a plea allocution before me on April 20, 2012. At the allocution, I advised Davis,

> a plea of guilty puts an end to all potential objections that you have to the legal sufficiency of the indictment, to any of the activities that flow from the indictment or the superseding information. You are pleading guilty because you are really guilty as you will tell me and all defenses are ended. If you want to stay with your defenses, you should not be pleading guilty. Do you understand that?

Apr. 20, 2012, Tr. at 2:13-21. Davis answered, "Yes." Id.

I advised Davis that Jose Nales, one of his two co-defendants on the conspiracy charge and his co-defendant on the charge of robbery on February 26, 2011, had told me, at his plea allocution, that Davis did not commit the robbery of February 26, 2011:

> You should both know also [Davis and Jesse Siegel, Esq., his attorney] that one of the co-Defendants has told me that you are not guilty. Of course, that has nothing to do with his plea. He pled guilty but he told me that you are not guilty.

Id. at 3:14-17. I then advised Davis that should he plead guilty, he would be giving up his motion to suppress and that therefore I would not be deciding his motion. Davis consulted with his attorney off the record. I asked, "Do you want to proceed, Mr. Davis?" Davis answered, "Yes." Id. at 4:3-19.

I asked Davis if anyone had pressured him in any way to cause him to plead guilty, Davis answered, "No." Id. at 8:18-20. Defendant expressed his satisfaction with the legal services of his attorney, Siegel. Id. at 8:12-17.

I then asked the government to describe the crimes with which Davis was charged. Id. at 11:15-16. The government stated that Davis was charged with two counts. The government described the elements of the first count, participating in a Hobbs Act robbery

3

conspiracy as follows: "[T]here are . . . two elements; first, that there was such a conspiracy or agreement and, second, that the defendant knowingly joined the conspiracy." Id. at 11:25-12:3. The government described the elements of the second count, using, carrying, and brandishing a firearm during this robbery conspiracy, as follows: "That crime has three elements; first, on or about the dates set forth in the information . . . the defendant either used, carried, or possessed a firearm during the robbery conspiracy and in furtherance of that robbery. The government would also establish the defendant or a co-conspirator brandished the firearm during the robbery conspiracy." Id. at 12:10-18.

Davis testified that he understood that these were the two crimes he was charged with committing. Id. at 13:21-23. Davis admitted his guilt:

> THE COURT: Mr. Davis, are you offering to plead guilty because you believe that you are in fact guilty of both crimes charged?
>
> THE DEFENDANT: Yes.

Id. at 19:15-18.

I then questioned Davis on the details of the crime to which he was pleading guilty:

> THE COURT: Tell me what you did.
>
> THE DEFENDANT: I agreed with somebody to rob the store.
>
> THE COURT: Rob a bodega.
>
> THE DEFENDANT: Yes.
>
> THE COURT: When did you reach this agreement?
>
> THE DEFENDANT: Between January and March 15, 2011.
>
> THE COURT: These are the bodegas in the Bronx that [Assistant U.S. Attorney] Moyne mentioned?

THE DEFENDANT: Yes.

THE COURT: Did you carry a gun?

THE DEFENDANT: I didn't carry no gun [sic], no.

THE COURT: Someone else you know of carried a gun?

THE DEFENDANT: Yes.

(...)

THE COURT: The person who committed the robberies?

THE DEFENDANT: Yes.

THE COURT: You were aware that he was carrying a gun?

THE DEFENDANT: Yes.

Id. at 19:19-20:13.

The government then requested that I ask the Defendant to confirm that it was part of the plan that somebody would carry a gun and that the gun would be brandished. Id. at 19:15-17, 21:1-2. The Defendant confirmed these points.

> THE COURT: Was it a plan of the robbery that someone would be carrying a gun?
>
> THE DEFENDANT: Yes.
>
> THE COURT: In other words, that would be the way to get cooperation from the person in the store?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The idea was to get money from the store?
>
> THE DEFENDANT: Yes.
>
> (...)
>
> THE COURT: Was it part of the plan to show the gun to get the people to cooperate and give you over the money?

5

THE DEFENDANT: Yes.

(...)

THE COURT: You knew of course this was wrong?

THE DEFENDANT: Yes, I do.

Id. at 20:18-21:10. I found that Davis' plea of guilty was voluntary, that he understood the consequences of his plea, and that there was an independent basis for finding his guilt. See Fed. R. Crim. P. 11(b). I therefore accepted his plea of guilty. Apr. 20, 2012, Tr. at 21:11-17.

Later that day, Davis claims to have informed his attorney, Siegel, that he regretted his plea and wanted to withdraw it.

## I. Davis' Motion to Withdraw His Guilty Plea

Siegel withdrew from representing Davis and, on October 10, 2012, Davis, represented by new counsel, moved to withdraw his guilty plea, arguing that his guilty plea was involuntary because he did not have time to sufficiently weigh his plea as a result of: (i) the Court's statements at his plea allocution that Mr. Nales had exculpated him; (ii) the duress he was under due to the government's threat to file a superseding indictment exposing him to a possible prison sentence of 182 years; and (iii) his counsel's insistence that he plead guilty. On November 29, 2012, I denied Davis' motion, concluding that Davis had not shown a fair and just reason as to why he should be allowed to withdraw his plea. See Opinion, Davis, 906 F. Supp. 2d 305.

## II. Davis' First Motion for Reconsideration

On December 13, 2012, Davis filed his first motion for reconsideration of my November 29, 2012 order and opinion. He argued that I had overlooked the time period in which he made his decision to plead guilty and the combined effect of the factors affecting his

decision to plead. On December 26, 2012, I denied that motion for reconsideration, noting that "I took into consideration each factor, singly and in combination. I have reviewed my decision again, and I affirm its reasoning and conclusion." See Order Denying Motion, Dec. 26, 2012.

### III. Davis' Second Motion for Reconsideration

On June 17, 2013, the Supreme Court issued its decision in <u>Alleyne</u>. Four months later, on October 25, 2013, Davis filed this motion, a second motion for reconsideration, arguing that he could not have entered a guilty plea knowingly and voluntarily, since he pled guilty prior to the decision in <u>Alleyne</u>, and that the evidence adduced at his plea allocution did not provide a sufficient factual basis to sustain a conviction for aiding and abetting brandishing a firearm. The government opposes the motion.

Davis has not yet been sentenced.

## ANALYSIS

A district court has discretion to decide whether or not to grant a motion for reconsideration. See <u>Aczel v. Labonia</u>, 584 F.3d 52, 61 (2d Cir. 2009). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." <u>Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust</u>, 729 F.3d 99, 104 (2d Cir. 2013) (quotation omitted). Davis' motion is based on the Supreme Court's decision in <u>Alleyne</u>, which was decided after Davis' plea but before he was sentenced. As discussed below, <u>Alleyne</u> is a change of controlling law, and thus, a ground for reconsideration. However, upon reconsideration I again deny Davis' motion to withdraw his guilty plea.

## I. <u>Alleyne</u> is a change of controlling law

<u>Alleyne</u> is part of the overhaul of sentencing law wrought by the Supreme Court's decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). In <u>Apprendi</u>, the Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum is, in effect, an element of the crime that must be submitted to a jury and proved beyond a reasonable doubt. <u>Id.</u> at 490. Accordingly, the Supreme Court struck down a statute authorizing a judge to impose an enhanced sentence after making a factual finding of enhanced criminality because of a "hate crime." The Supreme Court held that the statute, by providing an increased maximum penalty without an indictment alleging and a jury finding each element of the crime violated a defendant's Sixth Amendment right to a jury trial. <u>Id.</u> at 491-92.

Two years later, in its 2002 decision <u>Harris v. United States</u>, the Supreme Court addressed the related question of whether the Sixth Amendment required that a fact leading to a mandatory minimum sentence be submitted to a jury and proved beyond a reasonable doubt. 536 U.S. 545 (2002). <u>Harris</u> answered in the negative, holding that, once an indictment and jury had authorized the state to impose a certain maximum penalty on a defendant, it was permissible for a judge to find facts leading to the imposition of a mandatory minimum sentence, so long as that sentence did not exceed the maximum authorized penalty. <u>Id.</u> at 560-65. Accordingly, the Court held that the facts leading to the imposition of a mandatory minimum sentence for brandishing a firearm in violation of 18 U.S.C. § 924(c)(1)(A) could be found by a judge rather than a jury because they were not elements of a crime and. <u>Id.</u> at 567-68.

In <u>Alleyne</u>, the Supreme Court overruled <u>Harris</u>, holding that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury"

and proved beyond a reasonable doubt. 133 S.Ct. at 2155. In that case, Allen Ryan Alleyne was charged with committing a robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a), and using or carrying a firearm in relation to a crime of violence, in violation of § 924(c)(1)(A). Id. at 2155. A jury convicted Alleyne, indicating that he had "[u]sed or carried a firearm during and in relation to a crime of violence," but declined to find that the firearm was brandished. Id. at 2156. Nevertheless, the sentencing court—relying on Harris—imposed a 7-year minimum sentence, pursuant to § 924(c)(1)(A), because the judge found that Alleyne had brandished a firearm. Id. The Supreme Court reversed, holding that whether Alleyne had in fact brandished a firearm was an element of a crime, which needed to be included in the indictment and submitted to the jury. Id. at 2161, 2163-64.

As many courts have held, Alleyne created a new constitutional right—to a jury trial on any fact that increases the mandatory minimum sentence—that did not exist under Harris. See, e.g., Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013) ("Alleyne establishes a new rule of constitutional law."). "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." Griffith v. Kentucky, 479 U.S. 314, 328 (1987). "[F]inal judgment in a criminal case means sentence." United States v. Abrams, 137 F.3d 704, 707 (2d Cir. 1998) (citing Berman v. United States, 302 U.S. 211, 212 (1937)). Accordingly, Alleyne's rule has retroactive effect in this case because Davis has not been sentenced.[2] Thus, Alleyne changed the governing law, and gave Davis the right to a jury trial on whether he brandished a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

---

[2] In that respect, this case differs from United States v. Redd, 735 F.3d 88 (2d Cir. 2013), in which the Second Circuit held that Alleyne did not apply retroactively to a collateral attack on a conviction, made after sentencing and direct appellate review had concluded.

9

## II. Motion to Withdraw a Guilty Plea

Since Alleyne is "an intervening change of controlling law," Kolel Beth Yechiel Mechil of Tartikov, Inc., 729 F.3d at 104, I consider whether it supports granting Davis' motion to withdraw his guilty plea. "The decision to allow a guilty plea to be withdrawn is committed to the discretion of the district judge." United States v. Harrington, 354 F.3d 178, 183 (2d Cir. 2004). A defendant may withdraw a guilty plea before sentencing for "any fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). "The standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." United States v. Schmidt, 373 F.3d 100, 103 (2d Cir. 2004) (quotation omitted).

"In determining whether there is a 'fair and just reason' to grant a motion to withdraw a guilty plea prior to sentencing, a district court should consider: (1) whether the defendant has asserted his legal innocence; (2) the amount of time that has elapsed between the plea and the motion; and (3) whether the Government would be prejudiced by a withdrawal of the plea. United States v. Ramos, 98 CR. 1038 (SWK), 2005 WL 120230, at *1 (S.D.N.Y. Jan. 20, 2005). "Additionally, courts should consider the circumstances surrounding the plea, including the nature and background of the defendant, and whether the plea was knowing and voluntary." Id.; see also Schmidt, 373 F.3d at 103 ("Courts may also look to whether the defendant has raised a significant question about the voluntariness of the original plea." (quotation and alteration omitted)).

### III. Background Equities:

At the outset, I note that the background equities militate against the exercise of discretion in Davis' favor. "[C]oncern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system." Schlup v. Delo, 513 U.S. 298, 325 (1995). But Davis' motion to withdraw his plea is based not on his innocence, but rather on alleged procedural defects in his guilty plea. Allowing Davis to withdraw his plea over eighteen months after it was made would likely prejudice the government's ability to go to trial, as the government would need the testimony of witnesses who, since April 2012, believed that this case is over. See Apr. 20, 2012, Tr. at 17:9-17 ("The government would prove the case with testimony from the victims of the crime . . . [and] some civilian witnesses. . . .").

### IV. Davis' Arguments:

Davis argues that Alleyne rendered his plea defective for three reasons: because he could not have understood his right to stand trial, in violation of Fed. R. Crim. P. 11(b)(1)(C); because he could not have understood the nature of the charge against him, in violation of Fed. R. Crim. P. 11(b)(1)(G); and because he did not admit to facts establishing a factual basis for his plea, in violation of Fed. R. Crim. P. 11(b)(3).

As discussed below, while Alleyne has changed criminal procedural law, its changes do not affect this case because this Court and the government anticipated Alleyne at the plea allocution. Davis has not identified any way in which his allocution regarding the brandishing enhancement would be different if it were conducted today, instead of in April 2012. Indeed, Davis specifically pled that it was part of the plan that a gun would be brandished during the robberies he conspired to commit. Accordingly, the circumstances of this case do not support concluding that Davis has a fair and just reason for withdrawing his plea.

11

## V. Rule 11(b)(1)(C) and 11(b)(1)(G):

"[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." McCarthy v. United States, 394 U.S. 459, 466 (1969). Federal Rule of Criminal Procedure 11(b)(1) provides that a court must advise a defendant about his rights and the nature of the crimes against him before accepting a guilty plea. Rules 11(b)(1)(C) and (G) specifically provide that the court must notify a defendant of "the right to a jury trial" and "the nature of each charge to which the defendant is pleading."

Davis argues that he did not understand the nature of the charges against him, or his right to a jury trial, because Alleyne changed the elements of the crime of brandishing a firearm and afforded him a right to a jury trial. Under Harris, which was the controlling precedent at the time of Davis' plea, whether Davis (or a co-conspirator) brandished a gun, in violation 18 U.S.C. § 924(c)(1)(A), was not an element of the crime; it was a sentencing factor, to be determined by the sentencing judge, rather than a jury. Alleyne changed that by making brandishing an element of the crime, and requiring that the government include the brandishing charge in the indictment, submit it to a jury, and prove it beyond a reasonable doubt. Davis argues that because of this change in law, his guilty plea was unknowing and involuntary.

The Second Circuit's decision in United States v. Gonzalez teaches that an intervening change in law can render a guilty plea unknowing and involuntary. 420 F.3d 111 (2d Cir. 2005). Gonzalez pled guilty to a drug crime on the understanding that the drug quantity, which could lead to a mandatory minimum and increased maximum sentence, would be decided by the judge. Id. During Gonzalez' allocution, the sentencing court explicitly advised the defendant that "its own preponderance finding as to [] drug quantity was all that was necessary to

impose" an increased sentence. Id. at 132. After Gonzalez' plea, the Supreme Court issued its decision in Apprendi, under which the government would have been required to prove the drug quantity beyond a reasonable doubt in front of a jury. On appeal, the Second Circuit concluded that, in light of Apprendi, Gonzalez had been misinformed of his right to a jury trial in violation of Rule 11(b)(1)(C). After reviewing the plea transcript—which indicated that Gonzalez wished to contest only the quantity of drugs he was charged with distributing and therefore pled guilty in order to concentrate his efforts on a Fatico hearing[3] regarding quantity—the Second Circuit concluded that this change in law was important to Gonzalez. Id. at 132-33; see also id. at 132 (noting that there was no "indication that the presumptively significant information . . . was in fact insignificant in the particular circumstances of the case"). The court concluded that Gonzalez had relied on the information regarding the right to a jury trial, noting that "if [he] had understood that the [drug quantity] was one that the government would have to prove to a jury at trial, it is doubtful that he would have waived that right." Id. at 133. Accordingly, the Second Circuit found that Gonzalez could withdraw his plea as he had not knowingly and voluntarily pled guilty, since his plea was "based on misinformation that a judicial finding as to drug quantity, rather than jury verdict or plea, would mandate imposition of [a] minimum twenty-year sentence." Id. at 133.

Here, there is no indication that Davis was deprived of significant information regarding the nature of the charged crime. See Fed. R. Crim. P. 11(b)(1)(G). Unlike in Gonzalez—where the sentencing court's statement that the drug quantity would be determined by the court, not a jury, was rendered incorrect by the Supreme Court's decision in Apprendi—in

---

[3] Fatico hearings are evidentiary hearings held to resolve disputed sentencing factors, conducted pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979).

this case the government and this Court anticipated the Supreme Court's decision in Alleyne and treated brandishing as an element. The information charging Davis contained the brandishing charge.[4] During Davis' plea allocution the government stated that brandishing was an element of the crime that the government needed to prove. See Apr. 20, 2012, Tr. at 12:8-18. And I specifically questioned Davis as to whether he aided and abetted brandishing. See id. at 21:1-5.

Davis maintains that the fact that this Court and the government treated brandishing as an element in anticipation of Alleyne is irrelevant, because Rule 11(b)(1) is concerned with the defendant's understanding of the charges against him. But Davis was advised by his allocution, and therefore knew, hat brandishing was an element of the crime to which he was pleading. Davis and Siegel (the attorney who represented him at the time of the sentencing) have submitted affidavits in support of this motion, and neither contends that Davis in fact believed, or was advised by counsel, that brandishing was not an element of the crime.[5] As such, the record before me indicates that Davis pled guilty on the understanding that brandishing was an element of the crime. Thus there was no violation of Rule 11(b)(1)(G)'s requirement that the court must notify a defendant of "the nature of each charge to which the defendant is pleading."

Similarly, there was no violation of Rule 11(b)(1)(C)'s requirement that a sentencing court notify a defendant of his right to a jury trial. During the allocution, I informed

---

[4] As part of his plea agreement, Davis waived indictment.

[5] Davis testified that during his discussions with counsel before he pled guilty, he "was never informed by Mr. Siegel (or subsequently otherwise made aware) that 'brandishing' was an element of the 18 U.S.C. § 924(c)(1)(A)(ii) offense," Davis Aff. ¶ 6, and Siegel testified that he "do[es] not recall informing [Davis] that 'brandishing' was an element," Siegel Aff. ¶ 5. However, we do not know whether the sum of what Davis was told about the government's proof on the count anticipated Alleyne. In any event, Davis was informed by, and knew from, his that brandishing was an element.

14

Davis of his right to have the government prove the charges against him beyond a reasonable doubt and to the unanimous satisfaction of a jury. Apr. 20, 2012 Tr. 9:5-10. Davis understood that brandishing was an element of one of the crimes he was charged with. Davis and Siegel's affidavits do not contend that Davis in fact believed, or was advised by counsel, that he was not entitled to a jury trial on the brandishing element.[6] As such, the record shows that Davis also believed that he had a right to a jury trial on the brandishing offense, and, unlike Gonzalez, knowingly waived that right when he pled guilty. Cf. Gonzalez, 420 F.3d at 133 (concluding that withdrawal of the plea was appropriate because "if [the defendant] had understood that the [drug quantity] was one that the government would have to prove to a jury at trial, it is doubtful that he would have waived that right").

Since Davis pled guilty on the understanding that he had a right to a jury trial on the brandishing offense, he is differently situated from Gonzalez who actually wanted to challenge the drug quantity, and only pled guilty because he affirmatively believed he did not have a right to a jury trial on that issue. See id. Davis did not rely on Harris' holding that the brandishing element would be decided by a judge when he entered his guilty plea: rather than asking for a Fatico hearing to contest the brandishing element, Davis simply admitted that he had aided and abetted the brandishing of a gun when he pled guilty. In sum, Davis has not shown that his plea was not knowing and voluntary.

---

[6] Davis and Siegel testify that, as far as they recall, Siegel did not advise Davis that he had a right to a jury trial on the brandishing element. Davis Aff. ¶ 7; Siegel Aff. ¶ 6. These statements do not establish that Davis was informed that he did not have a right to a jury trial on that issue.

15

## VI. Rule 11(b)(3):

Federal Rule of Criminal Procedure 11(b)(3) provides that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." This requirement "is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." United States v. Garcia, 587 F.3d 509, 514 (2d Cir. 2009) (quotations omitted). The court must assure itself "that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." Id. (quotation omitted). The absence of an adequate factual basis for entering a judgment against a defendant is a ground for granting a motion to withdraw a guilty plea. Gonzalez, 420 F.3d at 133.

Davis argues that there was no factual basis for concluding that he aided and abetted the brandishing of a firearm, rendering his plea defective under Alleyne. However, while Alleyne changed the procedure governing how a violation of 18 U.S.C. § 924(c)(1)(A)(ii) is proved, it did not alter the facts needed to prove a brandishing offense. Accordingly, there is no intervening change of law justifying reconsideration of the factual basis for Davis' plea. In any event, there was a factual basis for accepting the plea.

The statute at issue, 18 U.S.C. § 924 (c)(1)(A), provides in relevant part that:

> . . . any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
> (i) be sentenced to a term of imprisonment of not less than 5 years;
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; . . . .

16

Under 18 U.S.C. § 2(a), any person who "aids, abets, counsels, commands, induces or procures [the] commission" of a crime is punishable as a principal.

Davis contends that he did not admit to aiding and abetting brandishing a gun because he admitted only to knowledge that a gun would be brandished. In making this argument, he relies on the Second Circuit's decision in United States v. Medina and its progeny. 32 F.3d 40 (2d Cir. 1994). Medina held that a defendant could not be convicted under 18 U.S.C. § 924 (c)(1)(A), for aiding and abetting the use of firearm "merely because he knew that a firearm would be used or carried [during a robbery] and, with that knowledge, performed an act to facilitate or encourage the robbery itself." Id. at 45.

The defendant in Medina had arranged for a robbery to take place, but was not present when it took place. Id. at 42-43. Medina learned that one of his accomplices carrying out the robbery had independently decided to carry a gun, but Medina did not plan for or encourage the use of that gun. Id. at 43, 45.[7] The Second Circuit noted that a defendant cannot be "convicted as an aider and abettor unless he consciously assisted the commission of the specific crime in some active way." Id. at 45 (quotation omitted). The court held that the language of § 924(c) "requires proof that [the defendant] performed some act that directly facilitated or encouraged the use or carrying of a firearm." Id. Medina's mere knowledge that the firearm would be used was not enough; as the government had not presented any evidence that the defendant had facilitated or encouraged the use of the gun, the court held that the record did not support an aiding and abetting conviction. Id. at 45-46.

---

[7] The defendant had provided one of his accomplices with a different gun, but that gun was taken by the police before the robbery and was therefore not used in the robbery. Id. at 43, 45.

17

Contrary to Davis' argument, Medina does not control here. The Medina court placed an important caveat on its holding, noting that, "[h]ad [the defendant] been present at the attempted robbery, we would consider whether his conduct at the scene facilitated or promoted the carrying of a gun, or whether he benefitted from the gun's use so that he could be said to constructively possess the weapon; but he was not there." Id. at 46. In the decades since Medina was decided, the Second Circuit has held that a defendant who is physically present at a crime scene where his cohorts carried a gun could be said to have facilitated or promoted the carrying of that gun. In United States v. Gomez, the Second Circuit noted that Medina's reasoning was limited to "a participant who was geographically distant from the crime and played no supportive role as the robbery took place," and held that a lookout during an armed robbery could be said to have aided and abetted the use or carrying of firearms because of his "critical supportive role." 580 F.3d 94, 103 (2d Cir. 2009). Since Davis conspired to take part in the robberies at the time the gun was to be brandished, he was to aid and abet his co-conspirator's brandishing of the gun by playing a supportive role. See id.

Additionally, the Medina court relied on the fact that the defendant had not planned for the firearm's use in the robbery. In United States v. Pipola, the Second Circuit distinguished Medina, holding that where the defendant had "designed the plans for two robberies and these plans, including the use of firearms, were effectuated through the acts of his co-conspirators," the defendant had aided and abetted the co-conspirators' use of the guns, by encouraging their use. 83 F.3d 556, 565 (2d Cir. 1996). Like in Pipola, Davis testified that he planned the robberies and that his co-conspirators' brandishing of a gun to extract cooperation was part of their plan. Apr. 20, 2012, Tr. at 19:20-23, 20:18-23. Accordingly, Davis too encouraged the brandishing of a gun. In sum, there was a factual basis for Davis' plea.

## CONCLUSION

As set forth above, the changes in law wrought by <u>Alleyne</u> do not present a fair and just reason for Davis to withdraw his plea. Accordingly, Davis' motion for reconsideration and to withdraw his guilty plea is denied. The Clerk shall mark the motion (Doc. No. 113) terminated. Davis will be sentenced on March 21, 2014 at 11am.

SO ORDERED

Dated:   February __, 2014
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge